# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0578-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

J. A. C. S.,[1]

    Defendant-Appellant.

_____

        Argued February 5, 2024 — Decided February 28, 2024

        Before Judges Sabatino and Marczyk.

        On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 02-03-0357.

        Leslie B. Posnock argued the cause for appellant, (Schwartz & Posnock, attorneys; Leslie B. Posnock, on the briefs).

        Meredith L. Balo, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County Prosecutor, attorney; Meredith L. Balo, of counsel and on the brief).

PER CURIAM

---

[1] We use initials because the case involves a child victim. R. 1:38-3(c)(9).

Defendant J.A.C.S. pled guilty in 2002 to a child endangerment offense, was eventually sentenced after a long hiatus, and has since been deported. He appeals the trial court's denial of his petition for post-conviction relief ("PCR") and his motion to withdraw his guilty plea. For the reasons that follow, we remand for the trial court to conduct an evidentiary hearing.

I.

We summarize the history of this matter, subject to further development of the record on remand.

Defendant, a native of Belize, was living in New Jersey in 2001 with an expired tourist visa. He allegedly engaged in sexual contact with a four-year-old child in October 2001. A grand jury charged him with second-degree sexual assault, N.J.S.A. 2C:14-2(b); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); and fourth-degree lewdness, N.J.S.A. 2C:14-4(b)(1).

Following negotiations, defendant entered into a plea agreement with the State, in which he pled guilty to the third-degree endangering count in exchange for the other two counts being dismissed. As part of the agreement, the State agreed to recommend a sentence of probation, with various conditions, including an evaluation of defendant at the Avenel facility for sex offenders.

Defendant appeared with his counsel at a plea hearing on June 17, 2002.

2

He confirmed with the court that he had reviewed the indictment with his counsel and understood the charges against him. Likewise, defendant confirmed he had reviewed the plea form with counsel and understood it.

Defendant answered "yes" to question 17 on the plea form, which asked, "Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty?" (emphasis added). Following up on that subject, the trial court asked defendant at the plea hearing if he was a United States citizen. Defendant answered in the negative. The court then asked defendant whether he "underst[oo]d that if [he] enter[ed] a plea of guilty today, [he] may be subject to deportation?" (emphasis added). Defendant answered in the affirmative.

Defendant presented a sufficient factual basis for his guilty plea. Both counsel acknowledged he had entered into the plea agreement voluntarily. The court accepted the plea, and it agreed to release defendant on his own recognizance.

The court instructed defendant that he would have to return for a status conference on July 26, 2002, and that he would have to appear for sentencing on October 4, 2002. The court further advised defendant he would need to report for a presentence interview with probation and an evaluation at Avenel.

3

Defendant acknowledged to the court that he understood his obligations to appear for those hearings and appointments.

According to defendant, he did appear at Avenel for the evaluation and completed some of the other presentencing steps the court had prescribed. However, defendant failed to appear in court at his sentencing date. A warrant for his arrest was consequently issued.

Defendant, meanwhile, moved to Ohio, got married, and started a family. He received conditional permanent United States resident status in August 2010, and permanent resident status in October 2014.[2]

For reasons that are not apparent from the record supplied on appeal, it took over fourteen years for authorities to locate and apprehend defendant. He was arrested on the bench warrant on April 18, 2017, and brought back to New Jersey.

Defendant finally appeared for sentencing on June 30, 2017. The sentencing judge first confirmed with defendant that he could proceed without an interpreter, having communicated with his sentencing counsel in English. Defendant's hired sentencing counsel could not attend the sentencing and so had

---

[2] The record does not explain how defendant obtained these immigration rights with an open New Jersey bench warrant.

a second sentencing counsel stand in at the proceeding.

The sentencing judge noted that defendant had "seem[ed] to maintain his innocence" in the presentence report. The judge therefore asked sentencing counsel whether defendant "wished to withdraw the guilty plea." Counsel advised the judge his understanding was that defendant did not wish to withdraw his plea, and stated he had gone over the plea transcript with defendant that afternoon.

Addressing defendant, the sentencing judge asked if it was his intent to be sentenced, to which defendant replied, "[t]hat's what the lawyer told me, that I was—to have court today to be sentenced." The judge then asked if defendant maintained his innocence as to the charges, to which defendant replied, "I'm still innocent, because I never did nothing, but as I was going with my lawyer, I told him that whatever was in the papers before, I will take the plea."

Defendant further stated to the court regarding the original plea hearing he "just remember[ed] [he] told [his] lawyer that [he] was innocent, . . . and [he] remember[ed] [plea counsel had] told [him], just sign this paper and you're going to go home." Because defendant maintained his innocence to the sentencing judge, the trial court recessed for a few minutes to enable defendant to speak with counsel about whether he stood by the guilty plea. Minutes later, defendant

5

advised the sentencing judge that he stood by his guilty plea and that he "d[id]n't want to withdraw" it.

The court proceeded to sentence defendant, consistent with the plea agreement, to time served of 302 days, three years of probation, and other various fines and conditions. A final judgment of conviction was entered on July 14, 2017. Defendant did not appeal his sentence.

A few months later, in September 2017, the United States Department of Homeland Security initiated detention and deportation proceedings against defendant. Because his state court conviction for child endangerment in this case subjected him to mandatory deportation, defendant was ordered to be deported in 2018. He ultimately was removed from the United States to Belize in December 2020. Counsel represented to us at oral argument that defendant currently remains deported.

In January 2019, defendant filed a PCR petition. His central contention is that his multiple sentencing counsel were constitutionally ineffective in not taking steps to move to withdraw his guilty plea, and in failing to advise him that his offense of child endangerment exposed him to mandatory deportation.

Defendant supported his PCR petition with a certification from an attorney who is an expert in immigration law and criminal defense. The expert attested

that under the immigration laws, defendant was subjected to mandatory deportation by virtue of his guilty plea to a crime of moral turpitude. The expert opined that defendant's former counsel were remiss in failing to provide him with "clear advice" about the immigration consequences of his plea.

Defendant's verified petition similarly detailed how he had been deprived of adequate legal advice concerning the immigration consequences of his guilty plea. Among other things, defendant attested that that he had "explained [his] immigration status and [his] innocence to [his sentencing] attorney of record and advised [his counsel] that [he] did not want to maintain [his] guilty plea." Defendant stated he "was informed that Immigrations and Customs Enforcement ("ICE") 'could' come and pick [him] up, as they had a detainer on [him and] that it was 'up to them.'" Defendant also asserts he "was informed [by sentencing counsel] that [his] sentence was subject to the plea agreement from 2002 and that this could not be changed." Defendant noted his sentencing counsel of record was "not an immigration attorney and could not explain the consequences of [his] potential sentence."

Defendant further asserted that "[o]n the date of the sentence, [he] told the [c]ourt that [he] was innocent of the charges and [he] repeated this to [counsel] who represented [him] at sentencing." Defendant asserted he "did not have any

discussion concerning immigration consequences with this attorney . . . [who] was not able to answer [his] questions concerning what would happen to [him] with regard to immigration if [he] accepted the sentence, except to say that 'deportation was a possibility.'"

In addition, defendant certified that during the break in the sentencing hearing, he spoke with his counsel about the "plea, sentence and immigration issues." According to defendant, sentencing counsel told him that "the plea would not be vacated, that the [c]ourt was prepared to give [him] time-served and that ICE 'could' get involved with [his] case, since [he] had a detainer, but that [counsel] did not know."

Defendant further claimed that "[his] immigration status did not seem to be an issue of much importance" to either of the two attorneys who represented him at sentencing. He claimed he understood his counsel's use of the phrase "may be deported" to mean that "there was merely a possibility that [he] would be deported," but he did not understand "to what extent [deportation] was possible." Allegedly, neither of his attorneys at the sentencing process provided defendant with sufficient information "to understand how devastating the [immigration] impact would be."

According to defendant, because his family and his life had been in the United States, if he had "kn[own] the true ramifications" of a potential immigration matter, he "would never have accepted this sentence," "would have insisted on filing a motion to vacate [his] original plea," and would have chosen to proceed with trial. Defendant further asserted that if he had understood there was "no doubt regarding the consequences of [his] charges," "[he] would have fought for a verdict that reflected [his innocence.]"

After hearing oral argument on August 16, 2019, the PCR court, as a threshold matter, found no evidentiary hearing was necessary to determine the soundness of sentencing counsel advice "because no material facts are in dispute and no 'off the record' conversations are relied upon by the defendant." Specifically, the PCR court found "[t]he record is clear and the defendant's certification does not dispute that [his sentencing counsel] told the defendant he <u>may</u> be deported.". (Emphasis added).

The PCR court further ruled sentencing counsel was not responsible for informing defendant of immigration consequences stemming from his guilty plea, because the plea agreement made over a decade earlier "could not have been altered at that point without judicial intervention." The PCR court held that this "would impose an obligation on sentencing counsel that [they] did not

9

otherwise have."

The PCR court further held that the constitutional principles of  Padilla v. Kentucky, 559 U.S. 356, 365-66 (2010) (imposing obligations on criminal defense counsel to provide affirmative advice about deportation consequences) could not be applied to the conduct of defendant's plea counsel in 2002.  The court relied in this regard on State v. Gaitan, 209 N.J. 339, 346 (2012) (holding that Padilla was to be applied only prospectively).  The PCR court further ruled that a retroactive application of Padilla would improperly "reward the defendant's failure to appear for sentencing that was supposed to occur . . . years before Padilla."

The PCR court also rejected defendant's claims concerning his sentencing counsel.  The court ruled sentencing counsel were not deficient for failing to advise defendant regarding the possibility of a motion to withdraw his guilty plea because "such a motion would not have been granted and counsel is not under an obligation to inform the defendant of inaccessible avenues of relief."

Finally, the PCR court held that even if the performance of sentencing counsel had been deficient, defendant's PCR application would still be denied because their performance did not prejudice him.  The court reasoned that for defendant to show he was prejudiced by sentencing counsel, he needed to

demonstrate a reasonable probability that the outcome of the proceedings would have been different if he had moved to withdraw his guilty plea. This required an analysis of the four factors for the withdrawal of guilty pleas articulated by State v. Slater, 198 N.J. 145, 157-58 (2009).

The PCR court found the first Slater factor—assertion of a colorable claim of innocence—weighed heavily against defendant because "[w]hile the defendant now asserts his innocence, this claim is belied by the factual basis he provided at the time of entering his plea." Further, "the defendant's protestations of innocence are not supported by any external evidence."

As for the second Slater factor—defendant's reasons for wanting to withdraw the plea—the PCR court found it weighed "moderately" in defendant's favor, as defendant believed he had received ineffective assistance of counsel in accepting the plea and his "motivation for wanting to withdraw his guilty plea to avoid negative immigration consequences [wa]s not untoward."

The third Slater factor—the existence of a plea bargain—is not weighed as strongly as the other three. Nonetheless, the PCR court found this factor also weighed against defendant.

Finally, the PCR court found the fourth Slater factor—unfair prejudice to the State or unfair advantage to the defendant—"weigh[ed] heavily against the

defendant" because the "case involved the sexual assault of a child that occurred approximately eighteen years ago." The PCR court found the "excessive delay" present in defendant's case stemmed from his "own failure to appear for sentencing" and that, "[u]ndoubtedly, the State's ability to present credible witness testimony is significantly disadvantaged."

Weighing the four <u>Slater</u> factors together, the PCR court found defendant "ha[d] not presented a reasonable probability that his case would have reached any different or more favorable outcome if he had attempted to retract his plea or had been counseled regarding the immigration consequences of entering his guilty plea."

The PCR court held defendant's "motion to withdraw his guilty plea almost certainly would have failed" and that "even if he had been successful . . . there was significant, compelling evidence of the defendant's guilt that could have led to his conviction on this and other, more severe crimes."

## II.

Defendant now appeals the PCR court's denial of relief. His brief raises the following points:

POINT I

THE COURT BELOW ERRED IN DENYING [PCR]

A. THE COURT BELOW ERRED BY DECLINING TO APPLY THE STANDARD OF PADILLA V. KENTUCKY TO COUNSEL'S PERFORMANCE AT SENTENCING

B. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL UNDER STRICKLAND v. WASHINGTON

C. AN EVIDENTIARY HEARING IS NECESSARY TO DETERMINE WHETHER COUNSEL PROVIDED INCORRECT ADVICE TO DEFENDANT REGARDING THE IMMIGRATION CONSEQUENCES OF HIS CONVICTION

D. THE COURT BELOW ERRED BY CONFLATING THE REQUIREMENTS FOR GRANT OF PCR WITH THOSE FOR WITHDRAWING A GUILTY PLEA

We consider these arguments mindful of well-established standards. The Sixth Amendment of the United States Constitution guarantees a person accused of crimes the effective assistance of legal counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish a deprivation of that right, a convicted defendant must satisfy the two-part test set forth in Strickland by demonstrating that: (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense. Ibid.; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey). In reviewing such claims, courts apply a strong presumption that defense counsel

13

"rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.

These general principles have been extended by the United States Supreme Court to the representation provided by a criminal defense attorney in connection with a plea negotiation.  Lafler v. Cooper, 566 U.S. 156, 162-63 (2012); Missouri v. Frye, 566 U.S. 134 (2012).  To obtain relief, a defendant must show with "reasonable probability" that the result would have been different had defendant received proper advice from plea counsel.  Lafler, 566 U.S. at 163; see also Hill v. Lockhart, 474 U.S. 52, 59 (1985) (articulating and applying the "reasonable probability" test to such settings).

With respect to the present context regarding immigration consequences, the Supreme Court has held that criminal defense attorneys are affirmatively obligated to inform their clients about the deportation risks of entering a guilty plea.  Padilla, 559 U.S. at 367 (2010); see also Lee v. United States, 582 U.S. 357, 364-65 (2017) (holding that, when a defendant pled guilty prior to trial based on incorrect advice from counsel about deportation consequences, the court must determine "whether the defendant was prejudiced by the 'denial of the entire judicial proceeding . . . to which he had a right'") (quoting Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000)).

14

The PCR court correctly noted that the Supreme Court's 2010 opinion in Padilla does not apply retroactively. Chaidez v. United States, 568 U.S. 342, 344 (2013); Gaitan, 209 N.J. at 371-72. For cases that preceded Padilla, unconstitutionally ineffective assistance of plea counsel can only be established where counsel provided affirmatively misleading advice to a defendant about the immigration consequences of a guilty plea. See State v. Nuñez-Valdéz, 200 N.J. 129, 139-43 (2009) (where defense counsel informed the defendant there would be no immigration consequences arising from his plea).

Here, defendant acknowledges that the increased responsibility imposed on counsel by Padilla since 2010 does not apply retroactively to his plea counsel's conduct in 2002. Instead, defendant's focus is on the performance of his sentencing counsel in 2017, seven years after Padilla was decided.

Having considered the present record in light of these legal principles, we conclude the record is inadequate to determine if the PCR court's denial of relief is sound. There are significant questions of credibility that need to be addressed and resolved that bear upon the performance of sentencing counsel and whether defendant was prejudiced by any deficient performance.

Among other things, defendant has detailed numerous alleged failures on the part of his sentencing counsel to adequately explain the deportation

consequences of following through with his guilty plea and going forward with the sentencing. Defendant's narrative, if it were true, evidences that his sentencing counsel was not attentive to the mandatory nature of deportation consequences flowing from a guilty plea of child endangerment. Under the post-Padilla law, defense counsel in 2017 was obligated to apprise defendant of those consequences. In addition, defendant alleges that his sentencing counsel discouraged him from moving to withdraw his guilty plea, thereby depriving him of a potential avenue to avoid conviction through a hypothetical acquittal at trial.[3]

The record does not contain any certifications from defendant's multiple sentencing counsel refuting defendant's allegations of what he was told and advised. Nor is there an expert report from the State countering defendant's expert about the mandatory deportation ramifications of the guilty plea. Defendant's allegations are sufficiently plausible on their face to be indicative of a prima facie case of ineffectiveness, and, as such, a plenary hearing is appropriate. State v. Preciose, 129 N.J. 451, 462-63 (1992).

---

[3] In essence, defendant contends his sentencing counsel should have argued to the court words to this effect: "He wants to withdraw his guilty plea, Your Honor, because if he's convicted of this offense his deportation will be mandatory, and he didn't understand that until now."

Given the credibility-dependent nature of these subjects, we conclude it is most prudent that this matter be remanded for an evidentiary hearing to explore the factual issues in more depth, ideally with testimony from defendant's sentencing counsel and his own testimony, presumably presented remotely, in accordance with State v. Santos, 210 N.J. 129, 141-143 (2012). After such a plenary hearing, the trial court shall reconsider the matter and make pertinent credibility findings and updated conclusions of law.

For the guidance of counsel and the trial court, we add the following. First, the parties and the trial court should consider the legal ramifications of defendant's flight from New Jersey after he had been told by the sentencing judge to return for sentencing in October 2002. Defendant claims that his former counsel failed to notify him of any upcoming court dates after he had presented himself for the required pre-sentencing Avenel evaluation. The credibility of that contention of ignorance should be tested at a plenary hearing. The record is murky about exactly what transpired while defendant was in Ohio for over fourteen years, and whether he had tried to conceal his whereabouts, or whether he tried to contact his previous counsel during that lengthy interval.

In addition, the parties and the trial court should address whether as a matter of law defendant's absence from the state until after Padilla was decided

17

in 2010 should deprive him of the benefit of that precedent at his 2017 sentencing. The State and the PCR court cited no authority squarely on point. It is possible that cognate principles under the doctrine of "fugitive disentitlement" may pertain directly, or by analogy, to this question, but that concept has not been briefed to us or developed below. We therefore refer that issue to the trial court to be addressed after appropriate briefing.

Second, we conclude that an analysis of the Slater factors governing plea withdrawals should be reassessed after the plenary hearing. In particular, the second Slater factor, which focuses on the strength of a defendant's reasons for seeking withdrawal, 198 N.J. at 159, may be affected by the credibility of his narrative at the plenary hearing and by whether, in fact, he was actually prejudiced by any deficient actions and inactions by his sentencing counsel. We are mindful of instances in which a defendant has demonstrated unconstitutionally ineffective assistance of counsel in connection with a judgment of conviction derived from a guilty plea, where the remedy of plea withdrawal has been utilized. See, e.g., State v. O'Donnell, 435 N.J. Super. 351, 375 (App. Div. 2014) (remanding the matter for an evidentiary hearing based on defendant's claim of ineffective assistance of counsel and reconsideration of the application to withdraw a guilty plea after the hearing).

Third, we add our explicit recognition that this is an exceedingly old matter dating back over twenty years. We concur with the PCR court's observation that the State would be greatly prejudiced by an order vacating defendant's conviction and necessitating the revival of a long-dormant prosecution of a case with a child victim who presumably is now an adult. Even so, given the tenor of defendant's claims of ineffective representation, we are constrained to remand this matter for a plenary hearing to assure that his conviction was not unconstitutionally tainted.

Remanded for an evidentiary hearing. We do not retain jurisdiction and intimate no views on the appropriate outcome of the remand. Either party can pursue a new appeal or a motion for leave to appeal, as the case may be, following the remand.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0578-19